UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 22-60854-CIV-AHS

PAUL FORSYTHE,
     Plaintiff,
v.
STARBOARD YACHT GROUP, LLC, and
JAKE STRATMANN,
     Defendants.

_____/

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF HIS MSJ**

Plaintiff files this Statement of Undisputed Material Facts in Support of his MSJ.

1. Forsythe worked under the title of "parts manager" ("PM") from approximately early 2020 through or about August 20, 2020 which duties at first included performing manual labor fixing boats, attempting to bring in business (boat owners with their boats), and whatever other tasks to which he was assigned. (*Decl. of Forsythe* ¶ 1, attached as Ex.1). Stratmann operates day to day the limited liability company which is a marina with approximately 30 employees—Stratmann works there every day and tells everyone what to do and makes the decisions himself concerning how the business is going to be operated and who will or will not work for the limited liability company. *Id.* Forsythe does not have his own marina business and was economically dependent upon the Defendants for his livelihood who had such a business. *Id.*

2. Forsythe was directly employed by Defendant Jake Stratmann, during the period of time that he was employed as a PM. *Id.* ¶ 2. The person that Forsythe replaced was named Omar Shirley, who sued Defendants for overtime, and the case resulted in a Final Judgment in favor of Mr. Shirley. *Shirley v. Starboard Yacht Group, LLC*, Case No. 20-60792-CIV-DIMITROULEAS. *Id.* Thus, because the *Shirley* case was litigated while Forsythe was still employed, Defendants knew he was entitled to overtime. *Id.* The Defendants had another employee named John Haney, who sued for overtime which case settled while Forsythe was still

1

employed by Defendants. *Haney v. Starboard Yacht Group, LLC*, Case No. 20-60791-CIV-DIMITROULEAS. *Id.* The limited liability company has exceeded $500,000 in gross sales volume from 2019 to and including 2023 and has two or more employees who work on and handle and order goods and materials that originate outside the State of Florida. *Id.*

3.      Forsythe was not paid a "salary", as defined by the FLSA (though he received the same most 2-week pay periods that made it look like he was being paid a salary to a layperson), but rather was paid hourly for the first forty (40) hours that he worked in a workweek, and was not paid any remuneration for the hours that he worked over forty (40) in a workweek, and for those hours Forsythe is owed his straight-time pay and his overtime pay for all of those hours. Forsythe's hourly rate was for $25.00/hr. *Id.* ¶ 3. Forsythe was not eligible for and not paid any commissions (though Defendants told him he would be paid bonuses, but he never was). *Id.* Forsythe's pay was subject to being docked if he missed time, and thus was subject to reduction for quality or quantity of work. *Id.*

4.      The Defendants required Forsythe to work 60-70 hours per week each week Forsythe worked there. *Id.* ¶ 4. At first for the first few months, he performed manual labor fixing boats, and attempted to bring in business (boat owners with their boats) and whatever other tasks which he was assigned. *Id.* Forsythe was told that he would be reimbursed for expenses he laid out for captain's duties, but he never was. *Id.* Forsythe has an email he received that states he would be paid bonuses, but never was. *Id.* In late July 2020, Defendants offered Forsythe Mr. Haney's former position, but Defendants never placed Forsythe in it. *Id.*

5.      Because of the nature of Forsythe's job, Forsythe had to work through/during his lunch break. *Id.* ¶ 5. Forsythe inquired a few times but was told that the Defendants would not pay overtime. *Id.*

2

6.     Forsythe's job worked this way:  Forsythe was assigned to work out of their business location at a marina where the boats were kept that he worked on for them performing manual duties.  *Id.* ¶ 6. Thus, these were his primary duties working on boats.  *Id.*

7.     Forsythe's primary duties were not management, and in fact he never performed any managerial duties, although he did assist the manager.  *Id.* ¶ 7.

8.     Forsythe did not have any authority to interview, select, and/or train employees. *Id.* ¶ 8.  Accordingly, Forsythe did not interview, select, and/or train employees. *Id.* Forsythe was not permitted to ask any potential employee my own questions concerning the employment like someone performing a real interview would do.  *Id.* Forsythe did not have any authority to set and adjust the rates of pay and hours of work for any employees.  *Id.* Consequently, Forsythe did not set and adjust the rates of pay and hours of work for any employees.  *Id.* Forsythe had no authority to direct the work of employees, and 30 employees worked there.  *Id.* Forsythe did partially supervise a man named Elvis who worked in parts, but Elvis reported to Chris the service manager directly, Theresa LoRusso, and Defendant Stratmann.

9.     While Forsythe had the position of PM, Forsythe did not maintain production or sales records at all when he worked for the Defendant, nor did he use any such records to supervise or control any employee.  *Id.* ¶ 9. In fact, Forsythe does not know whether the business or the parts department made or lost money.  *Id.* Forsythe knows nothing about the sales numbers or figures in the business, as that was not his responsibility, but rather the responsibility of someone else in higher management.  *Id.* For example, Forsythe had nothing to do with setting amounts or terms customers would pay for work done on the boats.  *Id.*

10.     Forsythe had absolutely no say concerning any of the costs that were incurred concerning maintaining the business or buying items for the business to be conducted.  *Id.* ¶ 10.

For example, concerning wages paid to employees, Forsythe had no say concerning what any particular employee would be paid, how many employees could work, when, what hours they could work, whether their pay should be increased or decreased, as all of that was determined by Mr. Stratmann. *Id.* The employees worked a schedule which listed certain employees and the shifts that they were supposed to work and Forsythe had no authority to deviate from that schedule, and had no say in where those employees would actually work. *Id.* It was never Forsythe's responsibility or duty to have anything, to do with revenue and/or costs or how they ended up at the end of the year, or to even have basic knowledge concerning what they were. Forsythe had no authority to spend any of the Defendant's money at all, and he had no authority to authorize the payment of bills. *Id.* Forsythe never opened up any mail that came to the building for purposes of making any decision concerning the buildings with respect to that mail. *Id.*

11.     While Forsythe worked for the Defendants, Forsythe never appraised employees' productivity and/or efficiency for the purpose of recommending promotions or other changes in status. *Id.* ¶ 11. All Forsythe knows is that he performed his duties, and there was no one else in parts other than Elvis who helped out occasionally, and thus there were no employees there for Forsythe to appraise their productivity or efficiency and when there was an employee, Forsythe had no time to worry about what he was doing, as he was performing his job and Forsythe was performing his. *Id.* Forsythe never evaluated the work of any other worker in the building or who worked out of it, nor was Forsythe ever told that that was something that he should be doing. *Id.*

12.     While Forsythe worked for the Defendants, Forsythe never handled employee complaints and grievances, as that was for the Defendants to do. *Id.* ¶ 12. Also, Forsythe never

disciplined employees, nor did Forsythe have the power or authority to do that. *Id.* Forsythe did not plan any work for any employee, as there was no work to plan. *Id.* Forsythe never determined any techniques to be used by employees to do their job. *Id.*

13. Forsythe never apportioned work among any employees, as there were no employees who reported to Forsythe to whom to apportion work. *Id.* ¶ 13. Forsythe never determined the type of materials, supplies, machinery, equipment, or tools to be used by any employees, as the Defendants or the employees themselves decided all of that. *Id.* Forsythe had no involvement in controlling the flow and distribution of materials or merchandise and supplies, although there were times that Forsythe ordered that Forsythe was instructed to order by other employees including Stratmann. *Id.* Forsythe had to call in to Stratmann to get authorization as to what was being purchased and have it submitted as a purchase order. *Id.* Forsythe had nothing whatsoever to do with materials, merchandise, or supplies or their distribution. *Id.* Forsythe had no involvement whatsoever with respect to planning and controlling any budget. *Id.* Forsythe did not know that the marina had a payroll budget much less that the budget was for a specific amount, and Forsythe had nothing to do with it or setting it, because the schedule of the employees was determined by higher management and whether there were any budgets concerning revenue or costs in the buildings Forsythe cannot even tell you whether that is true or not, because reviewing any sort of financial documents or statements of the buildings was not part of his job, and he did not review any such documents.

14. Forsythe had no involvement in monitoring or implementing legal compliance measures. *Id.* ¶ 14. There were no legal issues that Forsythe had anything to do with while he worked for Defendant, including any paperwork concerning new employees or hires. *Id.* Forsythe had nothing to do with hiring anyone. *Id.*

15.     For significant periods of time, Forsythe either worked in the building with just Elvis parttime, and thus he was not customarily and regularly directing the work of two or more other employees, because that would have been physically impossible.   *Id.* ¶ 15.

16.     Forsythe did not have authority to hire or fire other employees, and had no authority to make suggestions or recommendations as to hiring and firing.  *Id.* ¶ 16. In fact, Forsythe told Defendants not to fire Frederick Hoffman (who was disabled), but Defendants (through Stratmann) said Forsythe's recommendation was rejected and he fired Hoffman, who later sued Defendants for disability discrimination. *Id.*

17.     The Defendants and their representatives knew that Forsythe was working overtime on average around 25 hours of overtime a week, and that federal law requires employees to be compensated at time and one-half per hour for overtime pay. *Id.* ¶ 17.   Forsythe had no responsibility for anything in the marina, much less ultimate responsibility for it.   *Id.*

18.     In the course of employment with Defendant, Forsythe worked the number of hours required of him, but was not paid time and one-half for all hours worked in excess of forty (40) during every workweek.  *Id.* ¶ 18.

19.     The service manager and project manager's compensation was greater than Forsythe, because they were paid well more than $25.00 per hour and thus they were paid much more than Forsythe.  *Id.* ¶ 19.

20.     Forsythe was never involved in any recordkeeping, monitoring and/or adjusting machinery, taking notes, using the computer to create documents or presentations, opening the mail for the purpose of reading it and making decisions, or using photocopier or fax machine to conduct any business of the marina.  *Id.* ¶ 20.  Forsythe never kept any time records of other employees or production records from the store.  *Id.* Each person who clocked in at the building

was responsible for his or her time records, although the main office monitored the hours worked as Theresa LoRusso reviewed the payroll every two weeks and if there were issues with hours she dealt with them.  *Id.* If in monitoring the hours worked, if she thought too many hours were being worked at the buildings by employees, she would email or call complaining.  *Id.* Forsythe never decided the distribution of materials, merchandise or supplies to maintain control of the flow of and expenditures for such items.  *Id.* Forsythe never spot-checked or examined what other employees were doing, as there simply was no time.  *Id.*

21.     I had no ability to influence the amount of Forsythe compensation.  *Id.* ¶ 21. Defendants simply decided what (in terms of a dollar amount) it wanted to pay Forsythe, when it wanted to pay Forsythe, and that is it.  *Id.* There is nothing Forsythe could do to influence what his compensation would be; if Forsythe could have, he would have absolutely increased his pay so he would at least make about what the other individuals like Haney were earning.  *Id.* Forsythe was not eligible for commissions, although his hiring documents stated that.  *Id.* Forsythe could not possibility have been responsible for and accountable for the overall profitability of the marina, as Forsythe does not even know whether the marine business was profitable or not.  *Id.* Forsythe does not (and did not) know whether the marine business was supposed to make money or not.  *Id.* Obviously, whoever decided what the space should be leased for, how long the leases should be, what business would come in, what improvements were going to be allowed, what price the work should be assigned, and who determined what costs would be allowed was managing or responsible for the overall profitability of the business and that was Defendant Stratmann.  *Id.* Forsythe had nothing to do with any of that.  *Id.* Thus, Forsythe's job was not to increase revenue.  *Id.* It could not have been.  *Id.* No one ever told Forsythe that his job was to increase revenue.  *Id.* Forsythe

never attempted to increase revenue the entire time he had the parts manager position. *Id.* Forsythe would not have known what to do had he been instructed to increase revenue.

22.     The primary duties enumerated herein were not performed incidental to and in conjunction with any sales or solicitations, as Forsythe did not engage in any sales whatsoever and all leads came from the Defendants. *Id.* ¶ 22.

23.     Forsythe was required to remain at the marine business. *Id.* ¶ 23. Consequently, Forsythe was not customarily and regularly engaged away from Defendants' place or places of business. *Id.*

24.     While Forsythe was employed by the Defendants as a PM, he did not make any sales and was not involved in sales of any kind. *Id.* ¶ 24. Forsythe never received sales training nor was he ever told that his position as PM was a sales position. *Id.*

25.     While Forsythe was employed by the Defendants as a PM, Forsythe did not obtain orders or contracts for the use of facilities. *Id.* ¶ 25.  Forsythe did not sell time on radio or television or solicit advertising for newspapers. *Id.*

26.     While Forsythe was employed by the Defendants as a PM, Forsythe never met a prospective tenant at their home or place of business. *Id.* ¶ 26. In fact, the Defendants owned every piece of the marina at which Forsythe worked. *Id.*

27.     While Forsythe was employed by the Defendants as a PM, Forsythe did not write sales reports, update or revise any sales or display catalogues, plan itineraries or attend any sales conferences. *Id.* ¶ 27.

28.     While Forsythe was employed by the Defendants as a PM, Forsythe did not transfer the title of tangible or intangible property nor did Forsythe participate in any sales, exchanges, contracts to sell, consignment for sale or shipment for sale. *Id.* ¶ 28.

29.     While Forsythe was employed by the Defendants as a PM, Forsythe did not obtain orders or contracts for services for the use of facilities, and in fact, never signed a lease or contract the entire time that Forsythe was employed by the Defendants as a PM, and Forsythe did not even determine what the terms of the lease/contracts were.  *Id.* ¶ 29. These were all decided by Defendants.  *Id.*

30.     While Forsythe was employed by the Defendants as a PM, Forsythe did not sign any contracts/leases, negotiate any material terms of the contracts, set contract amounts or set the terms of the contracts, as Forsythe was not authorized to do so. *Id.* ¶ 30. Thus, Forsythe did not have authority to exercise discretion or independent judgment with respect to matters of significance concerning the lease or the commercial properties shown to prospective tenants, including those things described herein.  *Id.*

31.     While Forsythe was employed by the Defendants as a PM, Forsythe did not sell or take orders for a service.  *Id.* ¶ 31.

32.     As a PM, Forsythe was effectively micromanaged by Stratmann who wanted to know where Forsythe PM was at all times, including anytime that Forsythe was not present at the Defendants' offices during normal business hours (Forsythe was always at the marine business during working hours).  *Id.* ¶ 32.

33.     While Forsythe was employed by the Defendants as a PM, Forsythe had no authority to exercise discretion and independent judgment with respect to matters of significance and Forsythe's work was not related to management or general business operations but rather was production work. *Id.* ¶ 33.

34.     While Forsythe was employed by the Defendants as a PM, Forsythe did not secure prospective commitments for contracts.  *Id.* ¶ 34.

Respectfully submitted,

By:   s/ *Chris Kleppin*
          Chris Kleppin
          Florida Bar No. 625485
          chris@kleppinlaw.com
          The Kleppin Firm, P.A.
          Attorneys for Plaintiff
          8751 W. Broward Blvd
          Suite 105
          Plantation, FL 33324
          Tel.  (954) 424-1933
          Fax  (954) 474-7405
Secondary E-mails:   kel@kleppinlaw.com
          assistant@kleppinlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 29, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record (Marc Rapaport, Esq.) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

By:   s/ *Chris Kleppin*
          Chris Kleppin
          Florida Bar No. 625485

10