## DECLARATION OF PAUL FORSYTHE

Paul Forsythe, first being duly sworn according to law, deposes and states as follows:

1.      The statements made in this affidavit are true and correct, and I have personal knowledge concerning the statements made herein.  I worked under the title of "parts manager" ("PM") from approximately early 2020 through or about August 20, 2020 which duties at first included performing manual labor fixing boats, attempting to bring in business (boat owners with their boats), and whatever other tasks to which I was assigned.  Stratmann operates day to day the limited liability company which is a marina with approximately 30 employees—Stratmann works there every day and tells everyone what to do and makes the decisions himself concerning how the business is going to be operated and who will or will not work for the limited liability company.  I do not have my own marina business and I was economically dependent upon the Defendants for my livelihood who had such a business.

2.      I was directly employed by Defendant Jake Stratmann, during the period of time that I was employed as a PM.  The person that I replaced was named Omar Shirley, and he sued Defendants for overtime, and the case resulted in a Final Judgment in favor of Mr. Shirley.  *Shirley v. Starboard Yacht Group, LLC*, Case No. 20-60792-CIV-DIMITROULEAS.  Thus, because the *Shirley* case was litigated while I was still employed, Defendants knew I was entitled to overtime.  The Defendants had another employee named John Haney, who also sued Defendants for overtime, while I was still employed and that case settled.  *Haney v. Starboard Yacht Group, LLC*, Case No. 20-60791-CIV-DIMITROULEAS.  The limited liability company has exceeded $500,000 in gross sales volume from 2019 to and including 2023 and has two or more employees who work on and handle and order goods and materials that originate outside the State of Florida.

3.      I was not paid a "salary", as defined by the FLSA (though I received the same most 2-week pay periods that made it look like I was being paid a salary to a layperson), but rather was paid hourly for the first forty (40) hours that I worked in a workweek, and was not paid any remuneration for the hours that I worked over forty (40) in a workweek, and for those hours I am owed my straight-time pay and my overtime pay for all of those hours.  My hourly rate was for $25.00/hr.  I was not eligible for and not paid any commissions.  My pay was subject to being docked if I missed time, and thus was subject to reduction for quality or quantity of work.

4.      The Defendants required me to work 60-70 hours per week each week I worked there.  At first for the first few months, I performed manual labor fixing boats, and attempted to bring in business (boat owners with their boats) and whatever other tasks which I was assigned.  I was told

that I would be reimbursed for expenses I laid out for captain's duties, but I never was. I have an email I received that states I would be paid bonuses, but never was. In late July 2020, Defendants offered me Mr. Haney's former position, but Defendants never placed me in it.

5.     Because of the nature of my job, I had to work through/during my lunch break. I inquired a few times but was told that the Defendants would not pay overtime.

6.     My job worked this way: I was assigned to work out of their business location at a marina where the boats were kept that I worked on for them performing manual duties. Thus, these were my primary duties working on boats.

7.     My primary duties were not management, and in fact I never performed any managerial duties, although I did assist the manager.

8.     I did not have any authority to interview, select, and/or train employees. Accordingly, I did not interview, select, and/or train employees. I was not permitted to ask any potential employee my own questions concerning the employment like someone performing a real interview would do. I did not have any authority to set and adjust the rates of pay and hours of work for any employees. Consequently, I did not set and adjust the rates of pay and hours of work for any employees. I had no authority to direct the work of employees, and hardly any employees worked there. I did partially supervise a man named Elvis who worked in parts, but Elvis reported to Chris the service manager directly, Theresa LoRusso, and Defendant Stratmann.

9.     While I had the position of PM, I did not maintain production or sales records at all when I worked for the Defendant, nor did I use any such records to supervise or control any employee. In fact, I do not know whether the business or the parts department made or lost money. I know nothing about the sales numbers or figures in the business, as that was not my responsibility, but rather the responsibility of someone else in higher management. For example, I had nothing to do with setting amounts or terms customers would pay for work done on the boats.

10.     I had absolutely no say concerning any of the costs that were incurred concerning maintaining the business or buying items for the business to be conducted. For example, concerning wages paid to employees, I had no say concerning what any particular employee would be paid, how many employees could work, when, what hours they could work, whether their pay should be increased or decreased, as all of that was determined by Mr. Stratmann. The employees worked a schedule which listed certain employees and the shifts that they were supposed to work and I had no authority to deviate from that schedule, and had no say in where those employees would actually work. It was never my responsibility or duty to have anything, I mean anything, to

do with revenue and/or costs or how they ended up at the end of the year, or to even have basic knowledge concerning what they were. I had no authority to spend any of the Defendant's money at all, and I had no authority to authorize the payment of bills. I never opened up any mail that came to the building for purposes of making any decision concerning the buildings with respect to that mail.

11. While I worked for the Defendants, I never appraised employees' productivity and/or efficiency for the purpose of recommending promotions or other changes in status. All I know is that I performed my duties, and there was no one else in parts other than Elvis who helped out occasionally, and thus there were no employees there for me to appraise their productivity or efficiency and when there was an employee, I had no time to worry about what he was doing, as he was performing his job and I was performing mine. I never evaluated the work of any other worker in the building or who worked out of it, nor was I ever told that that was something that I should be doing.

12. While I worked for the Defendants, I never handled employee complaints and grievances, as that was for the Defendants to do. Also, I never disciplined employees, nor did I have the power or authority to do that. I did not plan any work for any employee, as there was no work to plan. I never determined any techniques to be used by employees to do their job.

13. I never apportioned work among any employees, as there were no employees who reported to me to whom to apportion work. I never determined the type of materials, supplies, machinery, equipment, or tools to be used by any employees, as the Defendants or the employees themselves decided all of that. I had no involvement in controlling the flow and distribution of materials or merchandise and supplies, although there were times that I ordered that I was instructed to order by other employees including Stratmann. I had to call in to Stratmann to get authorization as to what was being purchased and have it submitted as a purchase order. I had nothing whatsoever to do with materials, merchandise, or supplies or their distribution. I had no involvement whatsoever with respect to planning and controlling any budget. I did not know that the marina had a payroll budget much less that the budget was for a specific amount, and I had nothing to do with it or setting it, because the schedule of the employees was determined by higher management and whether there were any budgets concerning revenue or costs in the buildings I cannot even tell you whether that is true or not, because reviewing any sort of financial documents or statements of the buildings was not part of my job, and I did not review any such documents.

14. I had no involvement in monitoring or implementing legal compliance measures. There were no legal issues that I had anything to do with while I worked for Defendant, including any paperwork concerning new employees or hires. I had nothing to do with hiring anyone.

15. For significant periods of time, I either worked in the building with just Elvis parttime, and thus I was not customarily and regularly directing the work of two or more other employees, because that would have been physically impossible.

16. I did not have authority to hire or fire other employees, and had no authority to make suggestions or recommendations as to hiring and firing. In fact, I told Defendants not to fire Frederick Hoffman (who was disabled), but Defendants (through Stratmann) said my recommendation was rejected and he fired Hoffman, who later sued Defendants for disability discrimination.

17. The Defendants and their representatives knew that I was working overtime on average around 25 hours of overtime a week, and that federal law requires employees to be compensated at time and one-half per hour for overtime pay. I had no responsibility for anything in the marina, much less ultimate responsibility for it.

18. In the course of employment with Defendant, I worked the number of hours required of me, but was not paid time and one-half for all hours worked in excess of forty (40) during every workweek.

19. The service manager and project manager's compensation was greater than mine, because they were paid well more than $25.00 per hour and thus they were paid much more than me.

20. I was never involved in any recordkeeping, monitoring and/or adjusting machinery, taking notes, using the computer to create documents or presentations, opening the mail for the purpose of reading it and making decisions, or using photocopier or fax machine to conduct any business of the marina. I never kept any time records of other employees or production records from the store. Each person who clocked in at the building was responsible for his or her time records, although the main office monitored the hours worked as Theresa LoRusso reviewed the payroll every two weeks and if there were issues with hours she dealt with them. If in monitoring the hours worked, if she thought too many hours were being worked at the buildings by employees, she would email or call complaining. I never decided the distribution of materials, merchandise or supplies to maintain control of the flow of and expenditures for such items. I never spot-checked or examined what other employees were doing, as there simply was no time.

21. I had no ability to influence the amount of my compensation. Defendants simply decided what (in terms of a dollar amount) it wanted to pay me, when it wanted to pay me, and that is

4

it. There is nothing I could to influence what my compensation would be; if I could have, I would have absolutely increased my pay so I would at least make about what the other workers were earning. I was not eligible for commissions, although my hiring documents stated that. I could not possibility have been responsible for and accountable for the overall profitability of the marine business, as I do not even know whether the buildings were profitable or not. I do not (and did not) know whether the marine business were supposed to make money or not. Obviously, whoever decided what the space should be leased for, how long the leases should be, what improvements were going to be allowed, what price the work would be charged, what equipment or items should be purchased for and under what terms they should be financed or leveraged, and who determined what costs would be allowed in the marine business were managing or responsible for the overall profitability of the business. I had nothing to do with any of that. Thus, my job was not to increase revenue. It could not have been. No one ever told me that my job was to increase revenue. I never attempted to increase revenue the entire time I had the parts manager position. I would not have known what to do had I been instructed to increase revenue. The parts I ordered via the internet were manufactured all throughout the world and when they would arrive at the business numerous employees would handle and work on them.

22.     The primary duties enumerated herein were not performed incidental to and in conjunction with any sales or solicitations, as I did not engage in any sales whatsoever and all leads came from the Defendants.

23.     I was required to remain at the marina. Consequently, I was not customarily and regularly engaged away from Defendants' place or places of business.

24.     While I was employed by the Defendants as a PM, I did not make any sales and was not involved in sales of any kind. I never received sales training nor was I ever told that my position as PM was a sales position.

25.     While I was employed by the Defendants as a PM, I did not obtain orders or contracts for the use of facilities. I did not sell time on radio or television or solicit advertising for newspapers.

26.     While I was employed by the Defendants as a PM, I never met a prospective tenant at their home or place of business. In fact, the Defendants owned every piece of the marina at which I worked.

27.     While I was employed by the Defendants as a PM, I did not write sales reports, update or revise any sales or display catalogues, plan itineraries or attend any sales conferences.

28.     While I was employed by the Defendants as a PM, I did not transfer the title of tangible or intangible property nor did I participate in any sales, exchanges, contracts to sell, consignment for sale or shipment for sale.

29.     While I was employed by the Defendants as a PM, I did not obtain orders or contracts for services for the use of facilities, and in fact, never signed a lease or contract the entire time that I was employed by the Defendants as a PM, and I did not even determine what the terms of the lease/contracts were.  These were all decided by Defendants.

30.     While I was employed by the Defendants as a PM, I did not sign any contracts/leases, negotiate any material terms of the contracts, set contract amounts or set the terms of the contracts, as I was not authorized to do so. Thus, I did not have authority to exercise discretion or independent judgment with respect to matters of significance concerning the lease or the commercial properties shown to prospective tenants, including those things described herein.

31.     While I was employed by the Defendants as a PM, I did not sell or take orders for a service.

32.     As a PM, I was effectively micromanaged by Stratmann who wanted to know where I PM was at all times, including anytime that I was not present at the Defendants' offices during normal business hours (I was always at the marina during working hours).

33.     While I was employed by the Defendants as a PM, I had no authority to exercise discretion and independent judgment with respect to matters of significance and my work was not related to management or general business operations but rather was production work.

34.     While I was employed by the Defendants as a PM, I did not secure prospective commitments for contracts.

Paul Forsythe states as follows under penalty of perjury, pursuant to 28 U.S.C. § 1746:  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and information.

EXECUTED on this 29 day of January, 2024, at Plantation, Florida.

_____
Paul Forsythe

6