UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 22-60854-CIV-AHS

PAUL FORSYTHE,
     Plaintiff,

v.

STARBOARD YACHT GROUP, LLC, and
JAKE STRATMANN,
     Defendants.

_____/

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT**

Plaintiff, Paul Forsythe ("Forsythe"), files this Motion for Summary Judgment ("MSJ"), pursuant to Fed. R. Civ. P. 56(c) and S.D. Fla. L.R. 56.1. Plaintiffs' Statement of Undisputed Material Facts (cited hereinafter as "Facts ¶ ___") has been filed before this MSJ.

## I.  BACKGROUND

This case is a Fair Labor Standards Act U.S.C. § 201 *et seq.* ("FLSA") action brought against Defendants. Defendants own and operate a marina and they are being sued because they are a business and a business owner who operates it day-to-day. (Facts ¶¶ 1-10). It goes without saying that the individual Defendant, as the sole principal of Defendant, binds it. Forsythe worked for the Defendant from early 2020 to August 2020. (Facts ¶ 1). Forsythe worked under the title "parts manager" ("PM"). (Facts ¶ 1). Forsythe's duties were ordering parts that he was instructed to order while working at Defendants' marina and attending meetings at the Defendant's corporate office and thus he did not exercise discretion or independent judgment on any matters of any significance, did not manage, and was not an outside salesperson. *Id.* ¶¶ 23-34. As a PM, Forsythe was not an outside salesperson because he was required to be in the office all day. (Facts ¶¶ 26, 29, 32). Notably, Forsythe was in no position to exercise any discretion or independent judgment with respect to matters of minor importance, let alone matters of significance. (Facts ¶¶ 20, 21, 6). As an example, consider the fact that Forsythe was

not permitted to (and did not) deviate from the Defendants orders as to what part to order and from whom and he had no authority to bind the company. *Id.*

While employed by Defendant, Plaintiff repeatedly complained about having to work overtime hours without properly being paid for them, but was told that the decision was the Defendants and that overtime would be required every work week, but would not be paid. *Id.* ¶¶ 4-5. The funds paid by Defendant to Forsythe were subject to docking by Defendant, if he failed to meet the requisite number of weekly hours as determined by Defendant. *Id.* ¶ 3. Additionally, Defendants intentionally failed to pay overtime to Forsythe to simply cheat him out of his wages because the individual who Forsythe replaced (Omar Shirley) sued the Defendants or overtime and obtained a final judgment in his favor, and Defendants and their representatives knew Forsythe was working overtime, and that federal law requires employees to be compensated at time and one-half per hour for overtime pay. *Id.* ¶¶ 2, 4-5.

Defendants have raised numerous meritless defenses as to liability in this case regarding Forsythe, which are (1) various exemptions, and it is unclear which exemption because Defendants just state various exemptions) so Forsythe will analyze the executive exemption which applies to high-level managers, the administrative exemption, and the outside sales exemption. These issues will be discussed in turn. Initially, however, the administrative exemption is not applicable because Forsythe's primary duties were not the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers and because Forsythe did not exercise discretion and independent judgment with respect to matters of significance and engaged in production work. 29 C.F.R. §§ 541.200-202. As explained in greater detail below, Forsythe did not perform work directly related to the running or servicing of the business, Forsythe did not lead a team of other employees assigned to complete major projects, were unable to commit the Defendants in matters that had significant financial impact, did not have

2

the authority to waive or deviate from established policies and procedures without prior approval, could not negotiate and bind the company without prior approval and had absolutely no authority to make an independent choice, free from immediate direction or supervision by the Defendants and Defendants' management team. *Id.* Similarly, the outside sales exemption is not applicable because Forsythe's primary duties did not involve making "sales" within the meaning of the FLSA, obtaining orders or contracts for services or the use of facilities (they did not consummate any lease, most leases were not consummated, they did not sell anything, Defendant does not sell anything, they never went to the customer's place of business, and they were not "outside" as contemplated by the exemption, because Forsythe was not customarily and regularly engaged away from Defendants' place or places of business in performing any of their duties at any point during his employment with the Defendants. 29 C.F.R. §§ 541.501-501.  In other words, Forsythe was not involved in outside sales as he was not required to nor did he ever make any "sales" period, let alone at the customer's place of business or the customer's home, as required.  29 C.F.R. § 541.502. Concerning the executive exemption, Forsythe was not paid a salary, his primary duty was not management, he did not customarily and regularly direct the work of two or more employees, and he did not have the power to hire and fire.  (Facts ¶¶ 3-22).

As explained in great detail below, summary judgment is appropriate in the instant case, since the record evidence establishes that there is no genuine issue of material fact as to: (1) Defendant's status as "employers" under the FLSA and Forsythe's status as one of its employees; (2) Defendant's status as an "enterprise" under the FLSA; (3) Defendants' failure to establish the applicability of the administrative exemption by clear and convincing evidence; (4) Defendants' failure to establish the applicability of the outside sales exemption by clear and convincing evidence; (5) Forsythe working more than 40 hours per week without compensation for overtime hours and (6) the willful nature of Defendants' failure to pay overtime.

## II.  LEGAL STANDARDS

### A.  STANDARD OF REVIEW – MSJ

Plaintiffs assume the Court is well aware of Rule 56 standards.

### B.  STANDARD OF REVIEW – DEPARTMENT OF LABOR REGULATIONS

The rulings, interpretations, and opinions of the Department of Labor's FLSA administrator "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Arriaga v. Florida Pacific Farms, L.L.C.,* 305 F.3d 1228, 1238 (11th Cir. 2002).

### C.  THE FAIR LABOR STANDARDS ACT ("FLSA")

FLSA exemptions are "affirmative defense[s] on which the employer has the burden of proof, *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, (1974), and those exemptions "are to be narrowly construed against the employer seeking to assert them. *Arnold v. Ben Kanowsky, Inc*., 361 U.S. 388, 392 (1960). The employer bears the burden of proving the applicability of exemptions by clear and convincing evidence. *Klinedinst v. Swift Investments, Inc.,* 260 F.3d 1251, 1254 (11th Cir. 2001); *Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993) (clear and convincing).

## III. ARGUMENT

### A.  FORSYTHE IS ENTITLED TO SUMMARY JUDGMENT UNDER THE FLSA ON 1) DEFENDANT'S STATUS AS TO HIS EMPLOYER, 2) STRATMANN'S INDIVIDUAL LIABILITY, AND 3) BEING AN EMPLOYEE OF DEFENDANT.

#### 1.    Forsythe Was An Employee of Defendants.

In different contexts, courts have developed separate tests to analyze whether an individual's status is that of an employee.  It is settled that under the FLSA, the "economic realities" test is used.  *Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297 (5th Cir. 1975); *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992).  The economic realities test applies to

FLSA cases, because the FLSA "defines the verb "employ" expansively to mean 'suffer or permit to work.'" *Darden*, 503 U.S. at 318 (quoting 29 U.S.C. § 203(g)). In applying the economic realities test, an "employee" is an individual "who as a matter of economic reality [is] dependent upon the business to which [she] render[s] service." *Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297, 299 (5th Cir. 1975); 29 C.F.R. § 1620.8. This is an extremely broad test, the application of which will typically result in a finding that the plaintiff is an "employee". *See Mednick*, 508 F.2d at 299-300.

Here, Forsythe was economically dependent upon the Defendant for his livelihood, as he had a job with the Defendants, which is an entrepreneurial limited liability company that is essentially a multimillion-dollar marine business. (Facts ¶¶ 1-11). Forsythe was a low-level employee for Defendants, and was paid by Defendants and Defendants created many documents stating that Forsythe was an employees of Defendants. (Facts ¶¶ 1-11).

2.      **The Defendants Are Both an Employer of Forsythe.**

Concerning whether the limited liability company constitutes an "employer" under the FLSA, § 203 broadly defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This is an extremely broad definition, that includes the limited liability company here. (Facts ¶¶ 1-11). "Whether an individual falls within this definition does not depend on technical or isolated factors but rather on the circumstances of the whole activity." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1160 (11th Cir. 2008) (internal quotation marks omitted). Under the FLSA, an employee may be jointly employed by multiple employers. *Mullins v. Posh Potties, LLC*, 2013 WL 5728105, at *2 (S.D. Fla.). A joint-employment relationship may exist when the employee "performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek." 29 C.F.R § 791.2(b). This joint

employment relationship "generally will be considered to exist ... [w]here one employer is acting ... in the interest of the other employer (or employers) in relation to the employee ... or [w]here the employers ... may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." *Id.* § 791.2(b)(2), (3); *see also Mullins*, 2013 WL 5728105 at *2.

Here, it is undisputed that the limited liability company employs, has employed over the years, and currently employs over 30 people to carry out its business (Facts ¶¶ 1-11), and that Defendant Stratmann had the power to hire and fire and did, in fact, hire and fire. (Facts ¶¶ 16). It is similarly undisputed that Defendant Stratmann exercised day-to-day operational control of the limited liability company.  (Facts ¶¶ 1, 8, 16).  Defendant Stratmann exercised control over significant aspects of the limited liability company's "day-to-day functions, including compensation of employees or other matters in relation to an employee", see Facts ¶¶ 1-16. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1314 (11th Cir. 2013).

Consequently, the undisputed facts support a finding as a matter of law that Defendant SYG directly employed Forsythe and that Stratmann had day-to-day operational control over the business, because Forsythe was directly economically dependent upon it for his living (he was paid by it and Defendant's documents state he was employed by it), and summary judgment should be granted in Plaintiffs favor on this issue.  *See* 29 C.F.R. § 791.2(b); *Mullins*, 2013 WL 5728105 at *2 (finding "joint employer" status where plaintiff alleged that individual owned two companies, controlled those companies, acted in their interests and supervised plaintiff); *Hernandez v. Art Deco Supermarket,* No. 13–20705, 2013 U.S. Dist. LEXIS 143824, at *9–11, 2013 WL 5532828 (S.D. Fla. Oct. 4, 2013) (finding "joint employer" status of corporate defendants sufficiently pleaded where plaintiff alleged that corporations under common control were joint employers); *Reilly v. Madison Ave. Media, Inc.,* No. 12–80558, 2012 U.S. Dist.

LEXIS 146404, at *5–7, 2012 WL 4838993 (S.D. Fla. Oct. 11, 2012) (holding plaintiff had sufficiently pleaded that manager with day-to-day involvement in corporation was joint employer with corporation).

        **3.**         **Stratmann Is Individually Liable to Forsythe for the FLSA Violations.**

If Stratmann had operational day-to-day control over the Defendant (LLC), he is individually liable to Forsythe. *Lamonica v. Safe Hurricane Shutters, Inc*., 711 F.3d 1299, 1314 (11th Cir. 2013); *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997). Here, it is undisputed that Stratmann employed, has employed over the years, and currently employs over 30 people to carry out his business (Facts ¶¶ 1-1), and that Stratmann had the power to hire and fire and did, in fact, hire and fire. (Facts ¶¶ 1, 16).  Stratmann exercised control over significant aspects of the LLC's "day-to-day functions, including compensation of employees or other matters in relation to an employee" see Facts ¶¶ 1-10.  *Lamonica v. Safe Hurricane Shutters, Inc*., 711 F.3d 1299, 1314 (11th Cir. 2013). ("to support individual liability, there must be control over "significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee.").  Forsythe's position is further supported by Defendants' own records which refer to Defendants' role as employers and supervisors of Forsythe. *Id.*

  **B. FORSYTHE IS ENTITLED TO SUMMARY JUDGMENT AS TO DEFENDANT'S STATUS AS AN "ENTERPRISE" UNDER THE FLSA**

On a Rule 56 motion, the Court "may consider ***pleadings***, depositions, answers to interrogatories, admissions on file, affidavits, oral testimony, matters subject to judicial notice, ***stipulations*** and ***concessions***, and other materials admissible in evidence or otherwise usable at trial. *See Clay v. Equifax*, 762 F.2d 952, 956 (11th Cir. 1985).  The courts have held that when an issue is not contested by a party, the opposing party is entitled to summary judgment on that issue. *Byrd v. Campbell*, 591 F.2d 326, 327 (5th Cir. 1979); *Rossi v. Associated*

*Limousine Servs., Inc.*, 438 F. Supp. 2d 1354, 1357 n.1 (S.D. Fla. 2006). Here, while Defendant did not admit that it was an enterprise in the most direct allegation concerning it in its Answer, Defendant seemed to have admitted that it is an "enterprise" engaged in commerce elsewhere in its Answer. However, it is clear that the LLC is an enterprise engaged in commerce as that term is defined in the FLSA. (Facts ¶¶ 1-11).

### C. FORSYTHE IS ENTITLED TO BOTH WILLFULNESS AND LIQUIDATED DAMAGES AS A MATTER OF LAW.

Under the FLSA a district court generally must award a plaintiff liquidated damages that are equal in amount to actual damages. The statute provides: "Any employer who violates the provisions of [the FLSA] . . . shall be liable to the . . . employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The Portal to Portal Act, 29 U.S.C. §§ 251–62, which amended the FLSA, provides a safe harbor for an employer who can establish that it acted in good faith and under the reasonable belief that it was in compliance with the FLSA. *Id.* § 260. Under § 255, the statute of limitations is extended to 3 years from 2 if there is a finding of willfulness. The standard for determining willfulness and liquidated damages is whether the employer either knew, or showed reckless disregard, as to whether his conduct violated the Act and whether it acted in good faith, respectively. *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1273 (11th Cir. 2008); *Joiner v. City of Macon*, 814 F.2d 1529, 1539 (11th Cir. 1987). Typically, this requires the employer to obtain legal advice with respect to whether the employee at issue is exempt. *Moon v. Technodent Nat'l, Inc.,* 2008 WL 2117053 *5 (M.D. Fla. 2008) (finding no evidence that the defendant had an objectively reasonable belief that the employer was complying with the FLSA because it did not seek specific legal advice concerning the employee vis-à-vis the FLSA, and noting that "while [the employer] can be said to have sought legal advice, it did not furnish counsel information necessary for a legitimate legal opinion upon which it could rely and base a

subsequent defense of 'good faith.'").  The cases interpreting the above standard have made it clear that the employer's burden to establish "good faith and ... reasonable grounds" is not a light one. *See Friedman v. S. Fla. Psychiatric Assocs., Inc.,* 139 Fed. App'x 183, 185-86 (11th Cir. 2005) (employer's testimony that it researched the FLSA in the past was insufficient because it did not update its research); *Spires v. Ben Hill County,* 980 F.2d 683, 690 (11th Cir.1993) (employer failed to demonstrate good faith because "it took no action whatsoever to investigate its compliance with the [FLSA] until it was contacted by the plaintiff's counsel").  In this case, summary judgment should be granted on the issue of willfulness and liquidated damages in light of the undisputed facts which unequivocally demonstrate that Defendant and Stratmann have longstanding knowledge of the PM position being misclassified as exempt employees and their obligation to pay overtime for PMs, as relayed to Defendants by the Final Judgment that Omar Shirley obtained against them for overtime under the FLSA while Forsythe was employed by Defendants.  (Facts ¶¶ 1-14).  Stratmann is an intelligent business owner. (Facts ¶ 1-11). As stated above, Defendant expressly stated that it was not going to pay overtime, period, or taxes. (Facts ¶ 1-11).  Defendant's refusal to pay overtime (and thus evade the payroll taxes on same) is telling. The willfulness of Defendant's conduct is evident when one considers the Defendants' elaborate schemes to create an end run around the FLSA, while admitting in the *Shirley* case the PM was entitled to overtime.  For example, Defendants employed numerous workers performing manual labor to modify and rehabilitate tenant space, and the Defendants refused to pay them any overtime. (Facts ¶ 1-11). The failure of the Defendant to pay overtime in light of the overwhelming evidence that PM was non-exempt requires a finding of willfulness as a matter of law.

**D.  FORSYTHE IS ENTITLED TO SJ ON THE ISSUE OF OVERTIME**

9

The undisputed evidence shows that Forsythe was required to work overtime as a condition of his employment, as confirmed by the Defendants' own records, and the testimony of Forsythe; Forsythe worked on average 65 hours per week. (Facts ¶¶ 3-5). Thus, Plaintiff is entitled to a finding as a matter of law that he worked more than 40 hours per week during the relevant time period, and at trial the extent of the overtime will be tried. *See Celotex*, 477 U.S. at 322.

### E. FORSYTHE IS ENTITLED TO SUMMARY JUDGMENT ON THE DEFENDANT'S EXECUTIVE EXEMPTION AFFIRMATIVE DEFENSE

Courts discount managerial titles in favor of actual work performed where employers give non-exempt employees titles as managers or supervisors in attempts to evade the FLSA. *See Meyer*, 881 F. Supp. at 1019 (citing *Cohn v. Decca Distributing Corp.*, 50 F. Supp. 270, 273 (E.D. Pa. 1943) ("[T]he plaintiff was given the empty title of 'assistance manager' to circumvent the provisions of the Fair Labor Standards Act."); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008).

The regulation that is applicable to the determination as to whether an employee is exempt as a management employee pursuant to the executive exemption is the primary duty exemption found in 29 C.F.R. § 541.100 (2004). That regulation is similar to the former tests (see 29 C.F.R. § 541.1), and case law analyzing the former tests is only partially applicable. The controlling and applicable regulation states Defendant must prove Forsythe was 1) compensated via salary; 2) primary duty was management; 3) customarily and regularly directed the work of two or more employees; and 4) could hire and fire. These elements will be discussed in turn. In general however, as stated, Forsythe did not manage anyone or anything; she did not supervise anyone, much less customarily and regularly direct the work of two or more employees, and she did not have the authority to hire and/or fire anyone or even give a recommendation that would be entitled to particular weight. (Facts ¶¶ 3-22).

10

### 1.    Forsythe Was Not Properly Paid a Salary

Forsythe was not properly paid a "salary", as defined in the regulation, because the Defendant had a disciplinary policy that subjected Forsythe to a pay reduction due to variation in the quality or quantity of work performed, which according to 29 C.F.R. § 541.602, is inconsistent with an employee being paid on a "salary basis". 29 C.F.R. § 541.602. *Dicta* in the case of *Auer v. Robbins*, 519 U.S. 452, 459 (1997); *Klem v. County of Santa Clara*, 208 F.3d 1085 (9th Cir. 2000); 29 C.F.R. § 541.118. The salary was not paid in that manner. (Facts ¶ 3).

### 2.    Forsythe's Primary Duty Was Not Management of the Enterprise.

The Defendant's assertion of the executive exemption does not pass the straight-face test. Under the applicable regulations, primary duty is defined in 29 C.F.R. § 541.700 and what managers do is defined in 29 C.F.R. § 541.102. Forsythe never performed any of those duties and her primary duty was not management. (Facts ¶¶ 3-22).

### 3.    Forsythe Did Not Customarily and Regularly Direct the Work of Two or More Other Employees

Under the regulations, the purported manager must customarily and regularly direct the work of two or more employees. 29 C.F.R. § 541.104. The testimony is overwhelming that Forsythe did not customarily and regularly direct the work of two or more other employees. (Facts ¶¶ 3-22).

### 4.    Forsythe Did Not Have the Authority to Hire and Fire.

The regulations discuss what constitutes the power and authority to hire or fire. 29 C.F.R. § 541.105. Here, Forsythe could not hire or fire. (Facts ¶ 16).

### F. FORSYTHE IS ENTITLED TO SUMMARY JUDGMENT ON THE DEFENDANT'S ADMINISTRATIVE EXEMPTION AFFIRMATIVE DEFENSE

Title 29 C.F.R. § 541.200(a)(1) states that in order to successfully establish that an employee is an exempt "administrative employee," an employer must demonstrate that the

employee meets the following criteria:  1) compensated on a salary or fee basis pursuant to § 541.600 at a rate per week of not less than the 40th percentile of weekly earnings of full-time nonhourly workers in the lowest-wage Census Region; 2) primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and 3) primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.   29 C.F.R. § 541.200(a)(1).

### a.  Forsythe Was Not Properly Paid a Salary

See *supra*, § III.E.1.

### b.  Forsythe's Primary Duties Were Not Related to The Management of General Business Operations of the Defendant or Defendant's "Customers".

Under the applicable regulations, 29 C.F.R. § 541.700, primary duty is defined.  It is entirely clear that the duties performed by Forsythe were non-exempt, non-administrative, clerical/laborer duties.  29 C.F.R. § 541.203.  (Facts ¶¶ 3-25).

Thus, the analysis of the § 541.201 factors requires the conclusion that not only was Forsythe's primary duty unrelated to management or general business operations but that Forsythe simply performed no management tasks whatsoever and did not exercise any discretion or independent judgment as it relates to matters of significance.   Accordingly, summary judgment on the administrative exemption is warranted on the ground that the Defendants cannot satisfy their burden to prove through clear and convincing evidence that Forsythe's primary duty the performance of work directly related to the management or general business operations of the Defendants' or its "customers".

The Defendants may try to argue that Forsythe performed work directly related to management or general business operations, but those are narrow categories enumerated in a regulation.   29 C.F.R. 541.201(b).   With respect to any issues that the application could

theoretically present, Forsythe did not participate in any employment tasks in those areas. (Facts ¶¶ 20-27).

    c. **Forsythe's Primary Duties Did Not Include the Exercise of Discretion And Independent Judgment With Respect to Matters of Significance**

Forsythe's work was not directly related to management or general business operations. *Id.* The "discretion and independent judgment" must include the employee having numerous types of decision-making authority, 29 C.F.R. § 202(b), but in this case, Forsythe was not responsible for any of § 202(b)'s referenced tasks at any point during his employment with Defendants. (Facts ¶¶ 20-27). Exercising discretion and independent judgment generally involves "the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541-202(a). Forsythe was unable to engage in such conduct as said responsibility with within the exclusive control of the Defendants and their management team. (Facts ¶¶ 20-27).

The regulations also state that the employee "has authority to make an independent choice, free from immediate direction or supervision", § 202(c); Forsythe did not have such authority; Forsythe was effectively micromanaged by their managers and responsible for rote date entry, which is exactly the sort of mechanical, repetitive, recurrent or routine work excluded from the administrative exemption. (Facts ¶¶ 1-32). Additionally, "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work." 29 C.F.R. § 541-202(e). "An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly." 29 C.F.R. § 202(f). Here,

Forsythe's job responsibilities, by definition, could not have resulted in financial loss to Defendant. (Facts ¶ 21).

The Defendants cannot possibly prevail in arguing that Forsythe exercised discretion or independent judgment at any point throughout the course of their employment with the Defendants because Forsythe did not have the authority to waive or deviate from established policies and procedures; did not have the authority to negotiate and bind the company on significant matters (as stated above, Forsythe could not even sign (and never did sign) any of the leases which passed through the commercial leasing department; did not provide consultation or expert advice to management; was not involved in planning long- or short-term business objectives; did not investigate or resolve matters of significance on behalf of management; and did not represents the company in handling complaints, arbitrating disputes or resolving grievances. (Facts ¶ 21-22).

### G. FORSYTHE IS ENTITLED TO SUMMARY JUDGMENT ON THE DEFENDANT'S OUTSIDE SALES EXEMPTION AFFIRMATIVE DEFENSE

The outside sales exemption derives from the incompatibility of minimum wage requirements (difficulty of recording hours) with the individual character of the work of such salespersons. *Jewel Tea Co. v. Williams,* 118 F.2d 202, 208 (10th Cir. 1941). Here, *it was not difficult to maintain time records of the hours Forsythe worked.* (Facts ¶¶ 23-34). The FLSA authorizes the Department of Labor (the "Department") to "define[ ] and delimit[ ]" the terms used in § 213(a)(1). In 1938, 1940, and 1949, the Secretary of the DOL ("Secretary") promulgated regulations aimed at interpreting the "outside salesman" exemption. At least by 1949, those regulations distinguished between exempt outside salesmen (who consummated their own sales) and nonexempt promoters (who stimulated the overall sales of their companies but did not consummate their own sales). *See* 14 Fed. Reg. 7730 (Dec. 28, 1949) (codified at 29 C.F.R. 541.500-504 (Cum. Supp. 1962)). In both 1940 and 1949, after holding hearings, the Department

14

of Labor (Department) issued reports on proposed changes to the regulations. *See* U.S. Dep't of Labor, Wage & Hour Div., *"Executive, Administrative, Professional . . . Outside Salesman" Redefined: Report and Recommendations of the Presiding Officer at Hearings Preliminary to Redefinition* (Oct. 10, 1940) (*Stein Report*); U.S. Dep't of Labor, Wage & Hour & Public Contracts Div., *"Executive" "Administrative" "Professional" "Local Retailing Capacity" "Outside Salesman": Report and Recommendations on Proposed Revisions of Regulations, Part 541* (June 30, 1949) (*Weiss Report*).

The Department's FLSA regulations remained virtually unchanged for 55 years. In 2004, following notice-and-comment procedures, the Department revised its "outside salesman" regulations. *See* 69 Fed. Reg. 22,122 (Apr. 23, 2004) (revising 29 C.F.R. §§ 541.500-04). The 2004 revisions, however, did not make any relevant substantive changes. Thus, the regulations continue to provide that an outside salesman must be primarily engaged in making sales or obtaining service orders, 29 C.F.R. 541.500(a)(1)(i)-(ii); that making sales of goods requires the transfer of title to those goods, 29 C.F.R. 541.501(b); and that promotional work is not exempt unless it is directed toward consummation of the employee's *own* sales, 29 C.F.R. § 541.503. Thus, the current regulations maintain the distinction between sales work and promotional work that the Department first articulated in the 1940s, even though several commenters requested that the distinction be eliminated during the 2004 rulemaking session. *See* 69 Fed. Reg. at 22,162. In clarifying the exemption's scope, Secretary explained that "[a]n employer cannot meet this requirement unless it demonstrates objectively that the employee, in some sense, has made sales." *Id.*

Here, Defendants cannot meet their burden to establish the exemption since it is undisputed that Forsythe did not make any sales (he just ordered parts) and Defendants made clear that they sell nothing (Facts ¶ 23-34) and that Forsythe's primary duties were

15

laborer/clerical work and promotional work directed towards facilitating the ***Defendants'*** marina empire.

**1.Forsythe's Primary Duty Was Not "Sales" But Was The Facilitation of Defendant's Marina, In Any Way in Which They Were Directed.**

The Code of Federal Regulations defines an "employee employed in the capacity of outside salesman" as any employee . . . "[w]hose primary duty is. . . making sales within the meaning of [29 U.S.C. § 203(k)]", or "[o]btaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and "[w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. § 541.500(a). The referenced statutory provision 29 U.S.C. § 203(k) states that "'[s]ale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." Additionally, in accordance with 29 C.F.R. § 541.700: "[t]o qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. . . . Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider . . . [are] the employee's relative freedom from direct supervision . . . ." *Id.* § 541.700(a). "The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee." *Id.* § 541.700(b). Specifically, "[i]n determining the primary duty of an outside sales employee, work performed incidental to and in conjunction with *the employee's own outside sales or solicitations*, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences." 29

C.F.R. § 541.500(b). *Defendant's own positions in previous court cases state the PMs are non-exempt.* (Facts ¶ 2).

Here, it is clear that Forsythe spent more than 50 percent of his average work week performing non-exempt work, 29 C.F.R. §§ 541.5, 541.507, as the telephone calls that he received, even those dealing with parts, did not concern matters which were incidental to or in conjunction with his own individual sales efforts and they could not reasonably expect any compensation from such activity. (Facts ¶ 26-32). Here, Forsythe's primary duty was laborer work on boats and ordering parts from the Defendant's offices, through the completion of pre-assigned tasks, including answering telephones in a secretarial capacity, routine data entry, clerical work and other errands which had no relation to the Defendants' general business. (Facts ¶¶ 26-32)). Forsythe did not determine his own hours of work (Facts ¶ 12), did regularly meet with prospective customers, but it was at the Defendant's properties and not at the customer's place of business (Facts ¶ 26-34); to the contrary, Forsythe was subject to constant supervision and required to abide by Defendant's strictly enforced policies, with no authority to deviate without the express permission of Defendant or their management team. (Facts ¶¶ 26-34). At best, Forsythe's primary duties were entirely comprised of promotion activities designed to stimulate the ordering of parts that and to field questions from employees concerning them; and thus, are not "exempt outside sales work" *Id*. These tasks were not incidental to or in conjunction with Forsythe's sales work as they were not tasked with making any sales, did not consummate any sales, could not negotiate the terms of any sales and had no authority to bind the Defendant. (Facts ¶¶ 23-34). While it is Forsythe's contention that the ordering of a part does not constitute a sale, since the transfer of title is non-existent, even if a lease were to be considered a sale, Defendants' outside sales exemption argument must still fail since Forsythe ***never*** executed any contracts for Defendant; thus, rendering any primary duty argument, as it relates to the execution

17

of contracts, meritless. As the primary duty of sales agents is selling and the primary duty of those who answer telephones is answering telephones, it is clear that Defendants have failed to sustain their burden of proof that Forsythe fall within the exemption of outside salespeople. *See Donovan v. Walter W. Cheney, Inc.,* 510 F. Supp. 748, 752 (D.N.H. 1981) (holding employees who were employed as real estate persons and paid solely on a commission of gross sales price without receiving either a salary or a draw against commission, who were required to perform "floor" or "guest" work at employer's principal business premises in shifts of at least four hours and who spent more than 20% of their time performing nonexempt work which was not in connection with their own individual sales efforts and for which they could not reasonably expect compensation, were not within the outside sales exemption).

### 2. Forsythe Did Not Make Any "Sales" Within the Meaning of Section 3(k) of the Act or Obtain Orders or Contracts for Use of Facilities

Sales within the meaning of section 3(k) of the Act include the transfer of title to tangible property, and in certain cases, of tangible and valuable evidences of intangible property. Section 3(k) of the Act states that "sale" or "sell" includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 C.F.R. § 547.501(b). The Department has taken the position that an employee does not make a "sale" for the purpose of the exemption "unless he actually transfers title to the property at issue" which Forsythe assert is entitled to *Auer* deference, under the circumstances present in the instant case. *See Christopher v. SmithKline Beecham Corp.,* 132 S. Ct. 2156, 2166 (2012). Courts considering the applicability of this exemption have frequently held that the outside sales exemption is inapplicable in situations where employees are simply facilitating the sales for the employer as opposed to actually making the sales. *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 416 (5th Cir. 1975) (holding the outside sales exemption was not applicable where employer predetermined the manner in which the goods would be sold and the contractual agreement that would govern the

18

sale of goods). Here, Forsythe was not involved in **any** transactions involving the transfer of title to tangible property, any exchange of property, any contract to sell, any consignment for sale, any shipment for sale or any other sales related disposition (Facts ¶ 23-34); thus, summary judgment should be granted in favor of Forsythe.  *See* 29 C.F.R. § 541.501(b); Fed. R. Civ. P. 56(c).

The promotion-work regulation (§ 503) states that "[p]romotion work" as "one type of activity often performed by persons who make sales, which may or may not be exempt outside sales work, depending upon the circumstances under which it is performed." 29 C.F.R. § 541.503(a). Promotion work that is "performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work," whereas promotion work that is "incidental to sales made, or to be made, by someone else is not exempt outside sales work." *Id.* The reg further clarifies the scope of the "outside salesman" exemption, giving examples of exempt v. nonexempt promotional work, *e.g.*, the regulation discusses "a company representative" who visits a store and performs various tasks that include "consult[ing] with the store manager when inventory runs low" but do not include "obtain[ing] a commitment for additional purchases." 29 C.F.R. § 541.503(c). Such a representative "does not consummate the sale nor direct efforts toward the consummation of a sale," and his in-store promotional activities are "not exempt outside sales work." *Id*. The reg further explains that a "manufacturer's representative" is exempt as an outside salesman only if his "primary duty is making sales or contracts." 29 C.F.R. § 541.503(b). "Promotion activities directed toward consummation of the employee's own sales are exempt," the regulation reiterates, whereas "[p]romotional activities designed to stimulate sales that will be made by someone else are not exempt outside sales work." *Id*.

The Department has long taken the position that the term "outside salesman" is limited to employees who make their own sales, and does not encompass workers who perform promotional

functions that facilitate sales by others. *See* 29 C.F.R. §§ 541.500-04  Thus, under the applicable framework, Forsythe is not covered by the exemption because Forsythe was not involved in making any sales; at best, she was tasked with the occasional promotion of Defendant's properties to tenants for lease, which involved no change in title (and thus, no sale at all) at the Defendant's places of business; the promotion was exclusively completed at the express instruction of Defendant in accordance with their proscribed policies and procedures, which Plaintiffs had no ability or authority to modify without the express consent of Defendant.  (Facts ¶¶ 1-34).

### 3. Forsythe Was Not Primarily and Regularly Engaged Away From the Defendants' Places of Business

The FLSA defines an employer's "place of business" as including "any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales ... even though the employer is not in any formal sense the owner or tenant of the property." 29 C.F.R. § 541.502. Courts have found that the outside sales exemption is wholly inapplicable under circumstances where there is no evidence that the plaintiffs ever visited prospects at their homes or offices. *Brennan v. Modern Chevrolet Co.,* 363 F. Supp. 327, 331 (N.D. Tex. 1973) (concluding that none of the employees involved could be afforded the outside sales exemption as they were not engaged in their activities away from the place of business of their employer, but in fact were employed to work on the premises of the employer and other locations owned and operated by their employer); *Billingslea v. Brayson Homes, Inc.*, 2006 WL 562198, at *8 (N.D. Ga.).  Here, Forsythe was required to spend an overwhelming majority of his time working at the Defendants' office, as stated above.  No evidence exists which supports the contention that Forsythe was ***customarily*** and ***regularly*** engaged away from the employer's business as contemplated by the FLSA, which requires greater than occasional but less than constant engagement.  *Diaz v. Team Oney, Inc.*, 291 Fed. App'x 947, 950 (11th Cir. 2008).

**CONCLUSION**

For the foregoing reasons, Forsythe respectfully requests that the Court grant partial summary judgment in his favor as it relates to: (1) Defendants' status as an "employer" under the FLSA, Forsythe's status as an employee of the Defendants; (2) the LLC Defendant's status as an "enterprise" under the FLSA (3) Defendants' failure to establish the applicability of the Administrative Exemption by clear and convincing evidence; (4) Defendants' failure to establish the applicability of the outside sales exemption by clear and convincing evidence; (5) the Plaintiffs working more than 40 hours per week without compensation for overtime hours and (6) the willful nature of Defendant's failure to pay overtime, since the record evidence establishes that there is no genuine issue of material fact such that Plaintiffs are entitled to summary judgment as a matter of law.

Respectfully submitted,

By:  s/ *Chris Kleppin*
      Chris Kleppin
      Florida Bar No. 625485
      chris@kleppinlaw.com
      The Kleppin Firm, P.A.
      Attorneys for Plaintiff
      8751 W. Broward Blvd
      Suite 105
      Plantation, FL 33324
      Tel.  (954) 424-1933
      Fax  (954) 474-7405
Secondary E-mails:   kel@kleppinlaw.com
      assistant@kleppinlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 29, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record (Marc Rapaport, Esq.) or *pro se* parties identified

21

on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

By:   s/ *Chris Kleppin*

Chris Kleppin
Florida Bar No. 625485