UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:22-cv-60854-AHS

PAUL FORSYTHE,

      Plaintiff,

v.

STARBOARD YACHT GROUP, LLC
and JAKE STRATMANN

      Defendants.

_____/

## DEFENDANTS' RESPONSE TO "PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF HIS MSJ" [DE35]

Defendants, STARBOARD YACHT GROUP, LLC ("SYG") and JAKE STRATMANN ("STRATMANN"), pursuant to S.D. Fla. L.R. 56.1(b)(3), submits this Reply to Plaintiff's Statement [DE35]:

1.     Disputed. (Decl. Stratmann ¶ 18 & 20-45)

2.     Undisputed that SYH has gross earnings on excess of $500,000.00.  Disputed as the remaining allegations. (Decl. Stratmann ¶ 18 & 20-45)

3.     Disputed. (Decl. Stratmann ¶ 12-19)

4.     Disputed. (Decl. Stratmann ¶ 7, 18, 20-22 & 25-45)

5.     Disputed. (Decl. Stratmann ¶ 6-8)

6.     Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

7.     Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

8.     Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

9.     Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

10.    Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

1

11.     Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

12.     Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

13.     Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

14.     Disputed. (Decl. Stratmann ¶ 27, 29-30, 41, & 44-45)

15.     Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

16.     Disputed. (Decl. Stratmann ¶ 21, 27, 29, 33-38, 40-42 & 44-45)

17.     Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

18.     Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

19.     Undisputed.

20.     Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

21.     Disputed. (Decl. Stratmann ¶ 10, 12, 18, 20-22 & 25-45)

22.     Disputed. (Decl. Stratmann ¶ 11, 21-22, & 27-45)

23.     Undisputed.

24.     Disputed. (Decl. Stratmann ¶ 11, 21, 27, 39 & 43)

25.     Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

26.     Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

27.     Disputed. (Decl. Stratmann ¶ 11, 21, 27, 39 & 43)

28.     Disputed. (Decl. Stratmann ¶ 11, 21, 27, 39 & 43)

29.     Undisputed.

30.     Disputed. (Decl. Stratmann ¶ 11, 21, 27, 39 & 43)

31.     Disputed. (Decl. Stratmann ¶ 11, 21, 27, 39 & 43)

32.     Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

33.     Disputed. (Decl. Stratmann ¶ 12, 18, 20-22 & 25-45)

2

34.     Disputed. (Decl. Stratmann ¶ 11, 21, 27, 39 & 43)

## DEFENDANTS' STATEMENT OF FACTS IN SUPPORT OF ITS OPPOSITION TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT

35.     SYG engages in ongoing efforts to ensure compliance with FLSA regulations, including consulting with human resources experts and legal counsel regarding employment classifications and responding appropriately to Department of Labor ("DOL") inquiries.  By way of example, in 2017, the DOL conducted an audit and determined that one employee--not Plaintiff's role or title-- needed to be paid overtime since that employee was primarily secretarial. (Decl. Stratmann ¶3)

36.     SYG pays weekly, not bi-weekly. (Decl. Stratmann ¶4)

37.     SYG's skilled trades hours are 8:00 am to 4:30 pm, with half an hour for lunch. (Decl. Stratmann ¶5)

38.     At SYG, managers are accountable for overseeing departments, which often require them to arrive before their staff and ensure end-of-day managerial jobs are completed, including scheduling and following up with customers.   (Decl. Stratmann ¶6)

39.     Managers are exempt from overtime and do not have a schedule for lunch, breaks, and start and end times, however, they are accountable to support their roles and responsibilities.  (Decl. Stratmann ¶7)

40.     SYG nor STRATMANN control Managers' lunch breaks since managers are required to manage their direct reports' lunch breaks and schedules. (Decl. Stratmann ¶8)

41.     During FORSYTHE's employment, SYG follows a standard Expense reimbursement process managed by Theresa LaRusso, the office administrator and bookkeeper.  (Decl. Stratmann ¶9)

3

42.	SYG offers commissions on sales of Seakeeper units and Humphree fin units to managers and sales staff who bring in the leads.  Additionally, SYG offers performance-based pay and bonus structures based on operational key indicators and company goals.  (Decl. Stratmann ¶10)

43.	FORSYTHE was not an outside salesperson. (Decl. Stratmann ¶11)

44.	FORSYTHE's salary was not a function of hourly pay.   (Decl. Stratmann ¶12)

45.	FORSYTHE was paid a base salary of $55,000 annually. (Decl. Stratmann ¶13)

46.	Any deductions to FORSYTHE's salary were for his invoices for parts for his own personal boat. (Decl. Stratmann ¶14)

47.	While employed, FORSYTHE ordered parts for his personal boat and requested that the charges be deducted from his paycheck—not due to any disciplinary deduction or a deduction for a partial day absence. (Decl. Stratmann ¶15)

48.	SYG did not dock FORSYTHE's pay due to any absences for partial days, and SYG even paid him though he claimed to be out due to COVID, which he never had. (Decl. Stratmann ¶16)

49.	FORSYTHE never earned a bonus at SYG during his short stint of employment (7 months).  (Decl. Stratmann ¶17)

50.	FORSYTHE never worked on boats directly, nor did SYG bill for his time working on boats as this was not part of his job function.   FORSYTHE was a Licensed Captain to operate vessels.  It was FORSYTHE's job to decide who would operate the vessels if required by SYG to complete their scope of work between himself and other competent employees. (Decl. Stratmann ¶18)

4

51. FORSYTHE kept track of his hours worked via SYG's payroll system. (Decl. Stratmann ¶19)

52. During his job interview, STRATMANN told FORSYTHE that the position was a salary position due to SYG seeking to fill management positions requiring direct reports, which require oversight of hourly workers, managerial decisions, disciplinary actions, and responding to customers during off hours, result in working hours outside of our regular operating hours, which is from 8:00am-5:00pm, Monday through Friday.  (Decl. Stratmann ¶20)

53. FORSYTHE was hired to replace Jack Haney in the Integrator position and was strategically hired to fill the void of Parts Manager.  Within the first week of his hire, SYG onboarded Elvis Lazama for the Parts Manager position.  FORSYTHE managed the Parts Manager (Elvis Lazama), Service Manager (Chris Rizo), in addition to his other core responsibilities as Project Manager, Operations Manager, Sales, and Integrator. (Decl. Stratmann ¶21)

54. FORSYTHE never performed the job of Parts Manager and assumed the General Manager position, managing the parts and service department heads, including Project Management.  As the General Manager, he did not have any required training in light of his claimed experience with the US Coast Guard, where he claimed to have supervised at least 70 employees reporting directly to him.  Rather, his role was to supervise and manage direct reports.  (Decl. Stratmann ¶22)

55. EOS is the Entrepreneurial Operating System, which was developed by Gino Wickman in his multiple books, including *Traction*.  (Decl. Stratmann ¶23)

56. SYG runs on the EOS business model starting in 2019. (Decl. Stratmann ¶24)

57.     FORSYTHE willingly and knowingly accepted the additional role of Integrator and stated that he "Gets it [and] wants [the] role and "has the capacity to do it". (Decl. Stratmann ¶25)

58.     The SYG leadership team accepted FORSYTHE as its EOS Integrator, the highest management position at SYG under the CEO. (Decl. Stratmann ¶26)

59.     Throughout his employment, FORSYTHE was involved in critical managerial functions, including the direct management of operations and working closely with sales and Finance, the integration of complex products, and the oversight of major projects. (Decl. Stratmann ¶27)

60.     As the General Manager/EOS Integrator, Plaintiff held the CEO accountable for the CEO's visionary role at SYG. (Decl. Stratmann ¶28)

61.     During weekly Level 10 meetings run by FORSYTHE, as SYG's General Manager/EOS Integrator, FORSYTHE advised and managed SYG's lunch break schedules.   He had the ability and exercised his discretion to modify lunch schedules in compliance with labor and regulatory requirements.  This included ensuring that all hourly employees who worked through lunch would get paid for their time, including any hours over 40. (Decl. Stratmann ¶29)

62.     FORSYTHE was responsible for ensuring that SYG's time tracking system and payroll processing were used by the employees and that the employees time records where accurate for Finance to use for payroll.   All hourly workers reported to Paul and if there was an issue with their pay they would report directly to their managers who would report to FORSYTHE and he would be the person responsible to get with Finance and resolve the issue making sure they were paid correctly. (Decl. Stratmann ¶30)

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | WWW.CADOGANLAW.COM

63.     FORSYTHE was also a key person and integral in SYG's Accountability Charts (Decl. Stratmann ¶31)

64.     The Parts Department is one of the core business of SYG and is permanent and not temporary.  FORSYTHE managed the Parts Manager however it was FORSYTHE's responsibility to work with the managers and technicians to make sure the parts manager had the right information and ordered the correct parts. FORSYTHE was also accountable for making sure our inventory parts on hand were set up at the correct levels for the productivity and needs of the service and operations to satisfy customer demands and needs.   (Decl. Stratmann ¶32)

65.     In his short stint (approximately 7 months) at SYG, FORSYTHE made suggestions and recommendations about employees who were engaged in altercations, made recommendations about whether an employee could safely perform his job duties in light of impairments, terminated an employee, and directed more than two employees' work frequently, and was consulted by the CEO on matters of importance to SYG, such as budgets, estimates, sales opportunities, profitability, compensation of employees and evaluation of employees. (Decl. Stratmann ¶33)

66.     During FORSYTHE's employment, he would provide coaching, counseling, and disciplinary write-ups to employees, including Elvis Lazama, the Parts Manager, and Jack Haney (Project Manager). (Decl. Stratmann ¶34)

67.     FORSYTHE was integrally involved in meetings regarding an employee's safety in the workplace and whether that employee could safely perform his essential job

functions, this includes him directing the meeting in my office which he collaborated with others in review of the employee. (Decl. Stratmann ¶35)

68. FORSYTHE performed the job of General Manager, Service Coordinator, Project Manager, and Integrator, which included the Parts and Service Managers reporting to him. (Decl. Stratmann ¶36)

69. FORSYTHE was present at every interview during his employment.  In addition to making recommendations on whether to hire or fire employees, he also hired, fired, and disciplined them.  This was in addition to his role as an Integrator.  (Decl. Stratmann ¶37)

70. As an EOS Integrator, FORSYTHE's functions were to lead, manage, and hold employees, and me, as the CEO, accountable, streamline operating procedures, resolve conflict in a healthy manner and implement the EOS process.  (Decl. Stratmann ¶38)

71. As the SYG Integrator, FORSYTHE would accompany STRATMANN, the CEO, in order to make recommendations based upon his observations.  By working in close contact with me as the CEO, FORSYTHE had free access, unlike other employees, to the industry's inner workings, clientele and operations.  This included access to SYG's bookkeeping, loan documents, pricing, policies and payment terms.  FORSYTHE had this access to perform his duties as General Manager/EOS Integrator. (Decl. Stratmann ¶39)

72. FORSYTHE created the criteria upon which SYG evaluated its employees to evaluate performance and support pay adjustment, promotions and bonuses. Employee evaluations directly correlate to SYG's productivity and profit margins,  which FORSYTHE had full access to and was responsible for SYG's profitability. (Decl. Stratmann ¶40)

8

73.     FORSYTHE handled employee evaluations and enforcement of company policies and procedures to include employee discipline, and he was not just a manager but an executive manager. (Decl. Stratmann ¶41)

74.     FORSYTHE issued Employee Warnings to more than two employees (Decl. Stratmann ¶42)

75.     FORSYTHE was not tasked, nor was he responsible for working on clients' boats or performing manual work.  (Decl. Stratmann ¶43)

76.     FORSYTHE performed numerous roles, including enforcing SYG's drug policy. (Decl. Stratmann ¶44)

77.     FORSYTHE also documented numerous employees' failure to comply with SYG's policies, which resulted in the termination of employment for several employees. (Decl. Stratmann ¶45)

Dated: March 18, 2024                              Respectfully submitted,

By:     /s/ Gina M. Cadogan
        GINA MARIE CADOGAN
        Fla. Bar. 177350
        CADOGAN LAW
        300 S. Pine Island Road, Suite 107
        Plantation, Florida 33324
        Telephone: 954.606.5891
        Facsimile: 877.464.7316
        Email: gina@cadoganlaw.com
        Email: tyler@cadoganlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 18th day of March 2024 that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those

9

counsel or parties who are not authorized to receive electronically Notices of Electronic

Filing.

By:   _/s/ Gina M. Cadogan_____
      GINA MARIE CADOGAN, Esq.
      Fla Bar No: 177350

<u>**SERVICE LIST**</u>
***Paul Forsythe v. Starboard Yacht Group, LLC and Jake Stratmann***
**Case No. 0:22-cv-60854-AHS**

Chris Kleppin, Esq.
The Kleppin Firm, P.A.
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
chris@kleppinlaw.com
kel@kleppinlaw.com
assistant@kleppinlaw.com
*[CM/ECF]*

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107  | PLANTATION, FL 33324  | T: 954.606.5891 | WWW.CADOGANLAW.COM