IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-60854-CIV-AHS

PAUL FORSYTHE,
        Plaintiff,

vs.

STARBOARD YACHT GROUP, LLC
and JAKE STRATMANN
        Defendants.
_____|

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Plaintiff PAUL FORSYTHE was compensated on a salary basis appropriate for his managerial role, which exempted him from overtime compensation under the FLSA, pursuant to either the administrative or executive exemptions. (DE48¶45, 53-77) Accordingly, Defendants, STARBOARD YACHT GROUP, LLC (SYG and Defendants) and JAKE STRATMANN (STRATMANN and Defendants) file this Response in Opposition to the Motion (DE36) and the Court's Order (DE46) and state as follows:

## I.       BACKGROUND

Contrary to Plaintiff's efforts to characterize himself as a 'low-level employee' and downplay his actual role, duties, and title, Plaintiff was a key employee since he held the positions of General Manager, Service Coordinator, Project Manager, and EOS Integrator. (DE48 ¶ 53-77)   Plaintiff's duties include much more than "ordering parts" and attending meetings as alleged in his Motion.  (DE48 ¶ 53-77) Contrary to Plaintiff's SOF (DE 35 ¶ 23-34), Plaintiff's duties "transcended traditional managerial tasks to include the implementation of the Entrepreneurial Operating System (EOS), managing sales and operations, and leading high-impact projects.   (DE48  ¶  53-54,  59-77)  These

1

responsibilities underscore his executive, or alternatively administrative, role within SYG. (DE48 ¶53-54, 59-77)

Defendants' position is that Plaintiff, as the General Manager/EOS Systems Integrator, is in an executive or administrative position and thus not entitled to overtime. (DE48 ¶ 53-77) The undisputed facts demonstrate that "throughout his tenure at SYG, Plaintiff ascended to the role of Integrator, a position that placed him at the highest echelons of the company's management team.  (DE48 ¶ 58) In this capacity, Plaintiff worked closely with STRATMANN, the CEO, and was involved in all aspects of managing the company's operations.  (DE48 ¶ 71)

His duties encompassed holding people accountable, resolving conflicts effectively, maintaining standard processes and procedures, and implementing the EOS (Entrepreneurial Operating System) process. (DE48 ¶ 53-77) Throughout his employment, Plaintiff was involved in critical managerial functions, including managing multiple employees, managing operations and working closely with sales and Finance, integrating complex products, and overseeing major projects, such as overhauling and developing employee evaluation procedures. (DE48 ¶ 53-54, 59-77) Additionally, Plaintiff performed numerous roles, including enforcement of SYG'S Drug policy and documentation of numerous employees'.  (DE48 ¶ 76-77) Plaintiff was the point of contact and decision-maker for all hires and fires during his employment at SYG.  (DE48 ¶ 69-73)

In addition, Plaintiff's role as Integrator enabled him to influence the strategic direction of SYG significantly.   (DE48 ¶ 53-77) His responsibilities included the management of sales and integrating sophisticated products, such as Seakeeper and

Humphree equipment, into clients' vessels.  (DE48 ¶ 42) This aspect of his role required a comprehensive understanding of the business, the ability to make decisions that would impact the company's operations and financial health, and the authority to oversee major projects. (DE48 ¶ 53-77)

These responsibilities are emblematic of an executive role, as defined by the FLSA's exemption criteria." Thus, Plaintiff was not merely engaged in routine tasks but was making decisions of significance to the company's management and business operations. (DE48 ¶ 53-77)

## II.      MEMORANDUM OF LAW

### A.      Where, as Here, Disputes of Material Fact Exist, Summary Judgment Should be Denied.

The Defendants do not dispute that Plaintiff was an employee of SYG. The factual dispute, thus, involves whether Plaintiff was paid properly and not entitled to overtime. Plaintiff was hired for his proven leadership abilities, as evidenced by his experience in the Coast Guard, where he managed over 70 direct reports. (DE48 ¶ 54) This background was a pivotal reason for his selection as General Manager/EOS Integrator (Integrator) at SYG, highlighting his primary role in management and oversight, thus supporting the executive or administrative exemption under FLSA. (DE48 ¶ 53-77)

Courts should not grant summary judgment unless it is clear that a trial is not necessary and any doubts should be resolved against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 255 (1986).  The moving party has the "stringent burden" of establishing that there are no genuine issues of material facts. *Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).*  After that, "(c)ourts must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide

3

whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Skulas v. Loisell*, 2009 US Dist. LEXIS 117532 *4 (SD Fla. Dec. 17, 2009)(*quoting, Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Nor has Plaintiff demonstrated that STRATMANN is individually liable for the proper payment of his salary. (DE48 ¶40-41) Accordingly, where, as here, the movant has not met this high burden, the Motion should be denied.

**B.      Plaintiff has not met his Burden of Demonstrating SYG is an "Enterprise."**

Plaintiff's Motion should be denied as to the issue of "enterprise" as he admits there are no facts to support "enterprise". (DE36 p.7-8)   Plaintiff wants this Court to grant summary judgment without any facts to support the "stringent burden" he must prove. Further, the Motion states, "Here, while Defendant did not admit that it was an enterprise in the most direct allegation concerning it in its Answer, Defendant **seemed** to have admitted that it is an "enterprise" engaged in commerce elsewhere in its Answer."  (DE 36 p,7-8 emphasis added) The standard in granting summary judgment is that there are no material facts in dispute, not that a party "**seemed"** to admit a material fact. For this very reason, the Motion should be denied, and Plaintiff is required to prove that SYG is an "enterprise engaged in commerce."

**C.      Whether Plaintiff was Misclassified as an Exempt Executive or Administrative Employee is a Fact-Intensive Inquiry.**

The non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). "In determining whether the Plaintiff in this case meets the executive and/or administrative exemption of

4

the FLSA, the Court must consider the totality of the Plaintiff's responsibilities." *Rock v. Sunbelt Cranes, Construction & Hauling, Inc.*, 678 F.Supp.2d 1264, 1267 (MD Fla. 2009). The primary duty inquiry is "necessarily fact-intensive," consistent with the DOL regulation, which provides that the "(d)etermination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259 1264 (11th Cir. 2008); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008); 29 C.F.R. § 541.700(a).

The fact intensive inquiry focuses on the "(p)rimary duty," which is defined as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Factors to consider when determining the primary duty of an employee include, but are not limited to, (1) the relative importance of the exempt duties as compared with other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's relative freedom (*16) from direct supervision; and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. *Id.* "This analysis specifically requires an examination beyond an employee's title to the specific duties performed by the employee." *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 674 (11th Cir. 2009).

**D.** **Under Either the Administrative or Executive Exemption, Plaintiff's Salary was Fixed, Consistent, and Exceeded the Minimum Threshold Amounts for Either the Executive or Administrative Exemption.**

Plaintiff was hired as an exempt salary employee.  Without dispute, SYG paid FORSYTHE a salary above the minimum requirements under the executive exemption. (DE48 ¶45)  He was paid the same salary each pay period regardless of the hours

5

worked. Plaintiff was paid more than $450 a week.  There is no "disciplinary policy" of deducting from Plaintiff's salary.    Plaintiff, in his Motion, makes unsubstantiated false allegations. He did not and cannot provide evidence of such a policy. Plaintiff's salary was not reduced due to the hours he worked. In actuality, while employed, Plaintiff would order parts for his personal boat and request that the charges be deducted from his paycheck-not due to any disciplinary deduction or for a partial absence deduction. (DE48 ¶ 46-48) For exempt status, employees must be paid on a salary basis, not  "subject to reduction because of variations in the quality or *quantity* of the work performed." 29 C.F.R. § 541.118(a) (2002).  Thus, SYG did not dock FORSYTHE's pay due to any absences for partial days, and SYG even paid him, even though he claimed to be out due to COVID, which he never had. (DE48¶ 46-48) Rather, SYG's deductions were for FORSYTHE's boat parts he ordered for his own boat.

**E.      Plaintiff is Exempt as an "Executive" Employee.**

The requirements for establishing an executive exemption is as follows:

1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;
2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
3) Who customarily and regularly directs the work of two or more other employees; and
4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).[1]

---

[1] Where regulations are unambiguous, courts must give it the meaning its plain terms. *See Kisor v. Wilkie*, ⸺ U.S. –⸺, 139 S. Ct. 2400, 2415, 204 L.Ed.2d 841 (2019) ( if an agency's regulation is unambiguous, it "just means what it means—and the court must give it effect, as the court would any law").

The Secretary of Labor has defined management to generally include, but not be limited to, some of the following activities:

> . . . directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status . . . planning the work; (*10) determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked, or sold . . ..

29 C.F.R. § 541.102.

FORSYTHE's employment involved making decisions of significance, managing a department, and exercising discretion and independent judgment. (DE48 ¶ 53-77)  More importantly, Plaintiff was not given an empty title in order to avoid paying overtime. Plaintiff was hired as the General Manager/EOS Systems Integrator. His duties were to go above and beyond traditional managerial tasks, including implementing the Entrepreneurial Operating System (EOS), managing sales and operations, and leading high-impact projects. (DE48 ¶ 59)  These responsibilities underscore his executive role within SYG. (DE48 ¶ 53-77)

Throughout his employment, Plaintiff was involved in critical managerial functions, including the direct management of sales and operations, integration of complex products, and the oversight of major projects. (DE48 ¶ 59)  Plaintiff worked closely with the CEO and was involved in managing the company's operations. (DE48¶ 63-65, 67, 70-77)

His duties encompassed holding people accountable, resolving conflicts effectively, maintaining standard processes and procedures, managing sales, and integrating

sophisticated products, such as Seakeeper and Humphree equipment, into client vessels. (DE48¶ 42, 60-77) For example, FORSYTHE was integrally involved in meetings regarding an employee's safety in the workplace and whether that employee could perform his essential job functions safely. (DE48 ¶ 65) FORSYTHE was the person who organized the meeting in SYG's office in order to determine what, if any, accommodations the employee needed and whether SYG could implement those accommodations safely. (DE48¶ 65) He also would direct the duties of other employees, such as assigning tasks. (DE48 ¶ 53-77) Further, FORSYTHE was involved in strategic decisions affecting SYG's operations and financial health, such as weighing on personnel issues. (DE48 ¶ 53-77)

Further, SYG runs on the EOS System since 2019. (DE48 ¶ 56) Under the EOS System, FORSYTHE had the role of Integrator. (DE48 ¶ 58) An EOS "Integrator", in sum, is "the person who harmoniously integrates the major functions of the business. .. The integrator is the glue that holds the company together." *See Wickman, Gino. Traction. BenBella Books, Inc., 2011, at p. 92*. Under SYG's organizational chart created during the time that FORSYTHE was the General Manager/EOS Integrator, he is second only to the CEO. (DE48 ¶ 58) Under SYG's structure, FORSYTHE, as the Integrator, had significant managerial responsibilities and oversight over the SYG's entire operations, from financial to employee management to customer sales and service. (DE48 ¶ 59-77)

Where an employee manages a department that is the heart of the business and necessary to the business operations, the employee is exempt and not entitled to overtime. *Puentes v. Siboney,* 2012 U. S. Dist. LEXIS 150727 (U.S. So. Dist. FL. Oct. 19, 2012)(*citing, Rock v. Ray Anthony International, LLC*, 380 F. App'x 875 (11th Cir. 2010)). In an analogous case, an employee whose primary duty was to manage a

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | WWW.CADOGANLAW.COM

department subdivision of a crane's rental department was deemed to have management responsibilities.  *See Rock*, 678 F.Supp.2d at 1269 (crane rental department was the "heart" of the defendant's business and not a temporary department). Further, the employee in *Rock*, determined what equipment or tools were needed to perform the core functions of the business.  *Id.* at *11.  Similarly, the parts department is one of the core business of SYG and is permanent and not temporary.  (DE48 ¶64) FORSYTHE managed the Parts Manager however it was FORSYTHE's responsibility to work with the managers and technicians to make sure the parts manager had the right information and ordered the correct parts.  (DE48 ¶64) FORSYTHE was also accountable for making sure our inventory parts on hand were set up at the correct levels for the productivity and needs of the service and operations to satisfy customer demands and needs. (DE48 ¶ 64)

SYG asserts that FORSYTHE directed the work of more than two employees, assigned jobs and tasks to employees, fired employees, and weighed in on employee disciplinary measures.  (DE48¶ 70, 72-74, 75-77)   Indeed, in his short stint (7 months) at SYG, FORSYTHE, made suggestions and recommendations on employees who were engaged in altercations, made recommendations about whether an employee could safely perform his job duties in light of impairments, terminated an employee, directed employees' work frequently, and was consulted by the CEO on matters of importance to SYG, such as budgets, estimates, sales opportunities, profitability, compensation of employees and evaluation of employees. (DE48 ¶ 53-77)

Plaintiff disputes that he managed employees or was an Integrator, which is a material factor in SYG's classification of him as an exempt employee. This is not a nominal element, but goes to the core of FORSYTHE's role within SYG.  Plaintiff's disputes over

these badges of management support a denial of his Motion. Thus, summary judgment should be denied so that the jury can determine whether Plaintiff was an exempt executive employee.

**F.    Alternatively, Plaintiff is Exempt from Overtime as an Administrative Employee who Performed Non-Manual Work Overseeing a Department at the Heart of SYG's Business and Operations.**

Alternatively, SYG asserts that FORSYTHE is exempt from overtime compensation as an administrative employee.  Under the administrative exemption,

> (1) the employee must be paid at least $ 455 per week, and
> (2) the employee's primary duties must include: 'the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and . . . the exercise of discretion and independent judgment with respect to matters of significance.'"

29 C.F.R. § 541.200(a)(2)–(3).

Plaintiff worked closely with STRATMANN, the CEO, and was involved in all aspects of managing the company's operations.  (DE48 ¶ 70-71)  Pursuant to Rule 56(C)(1) "Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;"  Plaintiff has failed to support his Motion pursuant to the Rule and therefore it should be denied.

**1.    _Plaintiff's primary duties were non-manual and directly related to the management or general business of SYG._**

Moreover, Plaintiff was second to the CEO in the SYG organization.  (DE48 ¶ 58-59) He directly reported to the CEO with layers of employees under him on the chart.  (DE48

¶ 58) Not only did he manage the Parts Manager, the person responsible for maintaining *the* most important aspect of SYG's business of performing repairs on boats and vessels, but also SYG's other employees.  (DE48 ¶64) SYG could not function without a General Manager, such as FORSTYHE.  (DE48 ¶63)

As the General Manager/EOS Integrator, Plaintiff held the CEO accountable for the CEO's visionary role at SYG, held employees accountable, resolved employee conflicts, directly managed the *Manager* of the Parts Department, addressed customers' needs and demand for parts, and forecasted the same, and was directly managing the integration of sophisticated products, such as Seakeeper and Humphree equipment, into client vessels, including assigning employees to carry out the installations. (DE48 ¶53-77)  Thus, FORSTYHE "perform(ed) work directly related to the running or servicing of the business." See 29 C.F.R. § 541.201(a).

Plaintiff disputes these material facts, which warrants denying his Motion and having the jury decide this issue.

### 2. *Plaintiff exercised discretion and independent judgment on matters of significance.*

SYG's Parts Department is the most important department of SYG and goes to the core of its operations, since without parts, SYG cannot service or repair its customers' boats and vessels.  (DE48 ¶ 64) FORSTYHE exercised his independent judgment in managing the Manager of the Parts Department, Elvis Lazama.  (DE48 ¶ 53); *See Rock*, 678 F.Supp.2d at 1269 (even though plaintiff did not exercise his discretion, he had the ability to so do in order to ensure smooth operations).  FORSYTHE also managed employees, and importantly was responsible for ensuring that SYG's time tracking system and payroll processing were used by the employees and that the employees time records

11

where accurate for Finance to use for payroll.   (DE48 ¶ 62) Indeed, all hourly workers reported to FORSYTHE and if there was an issue with their pay they would report directly to their managers who would report to FORSYTHE and he would be the person responsible to get with Finance and resolve the issue making sure they were paid correctly.  (DE48 ¶ 62)  He also weighed in on applicants who interviewed for positions and made decisions to hire and fire employees.  (DE48¶ 69, 72-74, 75-77) In addition to his direct management of the employees, FORSYTHE created the employee evaluation system used by SYG to evaluate its employees, make changes to compensation, and provide bonuses. (DE48 ¶ 72)

Accordingly, FORSYTHE's performance and exercise of his discretion and independent judgment were directly related to SYG's core operations and business. (DE48 ¶ 53-77)  There was no manual, textbook, or checklists for this, but rather FORSYTHE had to use his knowledge and experience and make the decisions necessary to manage the business of SYG effectively.  (DE48 ¶ 53-77)

Plaintiff has not provided any facts to support this argument regarding the administrative exemption, but cites DOL regulations, but no facts to support this position. At this Motion for Summary Judgment stage, he must prove no material facts in dispute. Since he has failed to do so, his Motion should be denied.

**G.     No Liquidated Damages are Warranted, Since Plaintiff has not Proved Willfulness by SYG in its Classification of Plaintiff.**

Plaintiff is putting the horse before the cart.  Before this Court can even consider whether Plaintiff is entitled to liquidated damages, Plaintiff must prove his case in chief. Plaintiff must prove by a preponderance of the evidence that he was _not_ subject to either the executive or administrative exemption under the FLSA _and_ that he worked overtime.

12

Further, courts may award no liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith (**6) and that he had reasonable grounds for believing that his act or omission was not a violation of the (FLSA)." 29 U.S.C. § 260.  Plaintiff has not done this in his Motion for Summary Judgment because there are material facts in dispute.

The FLSA provides for liquidated damages and states that such damages shall be paid unless the "employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act," in which case "the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216" of the FLSA. 29 U.S.C. § 260.  A district court has discretion to reduce or deny liquidated damages "'if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the (FLSA).'" *Alvarez Perez*, 515 F.3d at 1163 (quoting 29 U.S.C. § 260).

The undisputed facts are that the Defendants have engaged in ongoing efforts to ensure compliance with FLSA regulations, including consulting with human resources experts and legal counsel regarding employment classifications and responding appropriately to Department of Labor inquiries. (DE48 ¶¶ 35) Further, in 2017, the DOL conducted an audit and determined that one employee, not Plaintiff's role or title, needed to be paid overtime since that employee was secretarial.  (DE48 ¶¶ 35) These facts alone could negate the award of liquidated damages if the Defendants were not to prevail at

13

trial.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Partial Summary Judgment should be denied as the Plaintiff has not presented and cannot present facts showing that there is no genuine dispute as to a material fact.

Dated: March 18, 2024     Respectfully submitted,

           /s/ Gina Cadogan
           GINA M. CADOGAN, Esq.
           Fla Bar No: 177350
           CADOGAN LAW
           300 S. Pine Island Road, Ste. 107
           Plantation, FL 33324
           Tel: 954.606.5891
           Fax: 877.464.7316
           Email Address: gina@cadoganlaw.com
           Email Address: tyler@cadoganlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18th day of March 2024, that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        By:  /s/ Gina M. Cadogan
           GINA MARIE CADOGAN, Esq.
           Fla. Bar No.177350

CADOGAN LAW | 300 S. PINE ISLAND ROAD, SUITE 107 | PLANTATION, FL 33324 | T: 954.606.5891 | WWW.CADOGANLAW.COM

## <u>SERVICE LIST</u>
**Paul Forsythe v. Starboard Yacht Group, LLC and Jake Stratmann**
**Case No. 0:22-cv-60854-AHS**

Chris Kleppin, Esq.
The Kleppin Firm, P.A.
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
chris@kleppinlaw.com
kel@kleppinlaw.com
assistant@kleppinlaw.com
[CM/ECF]

15